UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARAN S., <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, Administrator of California City Detention Facility; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No.  1:25-cv-01427-KES-SKO (HC) <br><br> ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION <br><br> Doc. 6 |

This habeas action concerns the re-detention of petitioner Sharan S., a noncitizen who was detained and released in 2024 but recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order.  Doc. 6.  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

I. **Background**[2]

Petitioner entered the United States on August 26, 2024, and he was encountered and detained by immigration authorities that same day in Mooers, New York. Doc. 1 at ¶ 15; Doc. 13-2. When the immigration authorities arrested him, they presented him with an immigration warrant which stated that his custody was "authorized by section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226. Doc. 3, Ex. A. After taking him into custody and questioning him, the immigration officials provided petitioner with a notice to appear for removal proceedings. *See* Doc. 13-2; Doc. 5, Ex. C. In the notice to appear, immigration officials designated him as "an alien present in the United States who has not been admitted or paroled"; they did not designate him as an "arriving alien." *Id.* The immigration officials then decided that petitioner would be released on his own recognizance pending those removal proceedings. Doc. 4, Ex. B; *see* Doc. 1 at ¶ 16. They provided him with an order of release on recognizance which stated that he was being released "in accordance with" 8 U.S.C. § 1226, provided that he comply with certain conditions. Doc. 4, Ex. B; *see* Doc. 1 at ¶ 16.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."[3] 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following his release, petitioner sought relief in his removal proceedings by filing an

---

[2] This section includes information from petitioner's verified petition and the parties' other filings. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[3] Respondents note that petitioner was released due to a lack of bed space, *see* Doc. 13-2 at 2, but that does not change the fact that petitioner was first required to demonstrate to immigration authorities that he was not a flight risk or danger, as required by 8 C.F.R. § 1236.1(c)(8).

2

1 application for asylum. Doc. 1 at ¶ 18. He maintained a clean criminal record. *Id.*

2   On September 26, 2024, ICE enrolled petitioner in the Intensive Supervision Appearance Program ("ISAP"), Doc. 13-1, Cruz Decl. at ¶ 9, and he was required to complete virtual check-ins through a mobile phone application, Doc. 16, Ex. A, Singh Decl. at ¶¶ 2–3. Respondents assert that petitioner violated the conditions of the ISAP program because he missed six check-ins through the application and his tracking device did not call in on two other occasions. Doc. 13-1, Cruz Decl. at ¶¶ 10, 12–18. Respondents also assert that, on November 24, 2024, when his tracker generated a potential removal alert, ICE agents told him to report in-person immediately, but he stated that he was unable to do so that day because he had no means of transportation and would report on November 26, 2024. *Id.* ¶ 11.[4]

  Petitioner asserts that each of these violations was the result of technical problems with the application that prevented him from completing the check-in. Doc. 16, Ex. A, Singh Decl. at ¶ 4. Petitioner's declaration explains that, when he attempted to complete those scheduled check-ins, the application either failed to open or froze, did not recognize his facial image despite correct positioning, displayed error messages, or did not transmit the completed check-in to the system, even after it showed him a confirmation of successful check-in. *Id.* ¶ 5. Petitioner further asserts that, each time this occurred, he attempted to contact his assigned ISAP case manager to inform them that the application had malfunctioned. *Id.* ¶ 6. He states that, if he was unable to reach his ISAP case manager by phone, he would report in person the same day or the next day to explain what happened. *Id.* He also states that, when he informed them about the technical issues, each time they changed out the watch device he was required to wear. *Id.* He states that he never intended to evade monitoring or miss a check-in and that each violation was due to circumstances beyond his control. *Id.* ¶¶ 7–9.

  On September 29, 2025, ICE re-detained petitioner at his home, and he is now detained at California City Correctional Facility. Doc. 1 at ¶¶ 3, 10. Several months before his detention, the Department of Homeland Security ("DHS") issued a policy which provides that noncitizens who

---

[4] Respondents do not state whether this was a violation of the ISAP program. Doc. 13-1, Cruz Decl. at ¶ 11; *see* Doc. 13 at 3 (noting "at least eight violations").

entered the United States without admission or parole are "applicants for admission" and therefore subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention. Doc. 1 at ¶ 4. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading of the statute. *Id.*

On October 27, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, arguing that his re-detention without a bond hearing violates the Due Process Clause and that 8 U.S.C. § 1226(a) applies to him, rather than 8 U.S.C. § 1225(b). Doc. 6. He requests either his release from detention or an order directing respondents to provide him with a constitutionally adequate bond hearing. *See* Doc. 1 at ¶ 30. Respondents filed an opposition, Doc. 13, and petitioner filed a reply, Doc. 14.

## II. Conversion to a Motion for Preliminary Injunction

When the Court set a briefing schedule on the motion, it ordered the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether the parties requested a hearing on the motion. Doc. 10. Neither party objected to converting the motion or requested a hearing. *See* Docs. 13, 14. Given that the standard for issuing a temporary restraining order and preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in opposition, *see* Doc. 13, petitioner's motion is converted to a motion for preliminary injunction.

## III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City &*

4

1  *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*
2  *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious
3  questions going to the merits—a lesser showing than likelihood of success on the merits—then a
4  preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's
5  favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767
6  F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.  Discussion**

    **a.  Likelihood of Success on the Merits**

Petitioner argues that DHS's new policy and the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), are based on an erroneous interpretation of the statute, and that because he has no opportunity for a bond hearing under those authorities, his due process rights have been violated. *See* Doc. 1; Doc. 3 at 6–11. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

    **1.  Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation

5

omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84. Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it allowed him to live in the United States and seek relief in his removal proceedings.

Respondents argue that the government's prior conditional release of petitioner pursuant to 8 U.S.C. § 1226(a) should not prevent them from re-evaluating that decision and subjecting petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 13 at 5 n.2, 6. Respondents argue that section 1225(b)(2)(A) applies because petitioner fits the statutory definition of an "applicant for admission." *See id.*

That argument fails because respondents' proposed interpretation of the statute is unpersuasive, and even if respondents were correct that section 1225(b)(2)(A) applies, petitioner possesses a protected liberty interest.

**i.   Petitioner Is Not Subject to Section 1225(b)(2)(A).**

Respondents' argument presents an issue of statutory interpretation, so the Court's analysis begins with the text of the statute. *See Lackey v. Stinnie*, 604 U.S. 192, 199 (2025).

**A. Statutory Framework.**

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As

6

relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). "Other than this limited exception[,] . . . detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

While section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out the "default rule" for noncitizens already present in the country. *Id.* at 288. It provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [T]he Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> (A) bond . . . ; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). "Section 1226(a), therefore, establishes a discretionary detention framework." *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

**B. The Government's Reading of Section 1225(b)(2)(A) Is Incorrect.**

Respondents argue that the applicable detention authority in this case is section 1225(b)(2)(A) because petitioner is an "applicant for admission." *See* Doc. 13 at 5–6. The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Respondents' argument that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.[5] As other courts have concluded, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2

---

[5] Other district courts have reached a similar conclusion. *See, e.g.*, *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); Doc. 11, *Benitez v. Noem*, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Doc. 11, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025). The only authority respondents identify which reaches the opposite conclusion is *Matter of Yajure Hurtado*, 29 I&N Dec. at 216 (BIA 2025). *See* Doc. 13 at 7. For the reasons stated in this Order, *Matter of Yajure Hurtado* is unpersuasive.

(D. Mass. July 24, 2025); *see also Lopez Benitez*, 2025 WL 2371588, at *5. As an initial matter, there is no evidence in the record that an "examining immigration officer" made these determinations.

Respondents' proposed interpretation of the statute ignores the plain meaning of the phrase "seeking admission." *Martinez*, 2025 WL 2084238, at *6. "Seeking" means "asking for" or "trying to acquire or gain." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking. And the use of a present participle, "seeking," "necessarily implies some sort of present-tense action." *Martinez*, 2025 WL 2084238, at *6. The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). And "entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre,* 14 I & N Dec. 467, 468 (1973)). To piece this together, the phrase "seeking admission" means that one must be actively "seeking" "lawful entry." *See Lopez Benitez*, 2025 WL 2371588, at *7.

Petitioner is not actively "seeking" "lawful entry" because he already *entered* the United States over a year ago. If anything, petitioner is seeking to *remain* in the United States. *See Lopez Benitez*, 2025 WL 2371588, at *7; *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

While petitioner could be considered an "applicant for admission" because he is an "alien present in the United States who has not been admitted," as defined at 8 U.S.C. § 1225(a)(1), respondents have failed to show that, over a year after he entered the country, petitioner was actively "seeking admission." Respondents' "selective reading of the statute . . . ignores its 'seeking admission' language." *Martinez*, 2025 WL 2084238, at *6. As the *Lopez Benitez* court noted: "If, as the government argues, [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6. The rule against surplusage counsels that

"'every clause and word of a statute' should have meaning." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule against surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part of it unnecessary.'" (quoting *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1105 (9th Cir. 2023)). Respondents' position would make the "seeking admission" language meaningless and violate the rule against surplusage. *Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *6.

Respondents' argument also disregards the context of sections 1225 and 1226 and the broader statutory scheme. As the Supreme Court noted in *Jennings*, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.*, 583 U.S. at 289 (emphasis added).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). The title of section 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "Inspection" is a process that typically occurs at the border or other ports of entry. *See Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully entered"); 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection."). The title of section 1225 also refers to "expedited removal," which applies to a noncitizen "who is arriving in the United States" and "is inadmissible." *See* 8 U.S.C. § 1225(b)(1)(A).

The government's interpretation of section 1225(b)(2)(A) would also render superfluous a

recent amendment to section 1226(c). *See Gomes*, 2025 WL 1869299, at *5. Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for noncitizens who have committed certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E) (emphasis added); *see Gomes*, 2025 WL 1869299, at *5 (explaining statutory section).

If every "applicant for admission"—which is defined, as relevant here, as an "alien present in the United States who has not been admitted," *see* 8 U.S.C. § 1226(a)(1)—is already subject to mandatory detention under section 1225(b)(2)(A), as the government contends, there would have been no need for the new section 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" *and* who has been "charged with, arrested for, or admits to" committing certain crimes, *see* 8 U.S.C. § 1226(c)(1)(E). Reading section 1225 as the government proposes would thus render section 1226(c)(1)(E) superfluous. *See Gomes*, 2025 WL 1869299, at *5; *Lopez Benitez*, 2025 WL 2371588, at *7; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

"When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect." *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Section 1226(c)(1)(E) is a detention provision; it has no other purpose. *See* 8 U.S.C. § 1226(c)(1)(E). If all noncitizens present in the United States without lawful admission were subject to mandatory detention under section 1225(b)(2)(A) already—as respondents argue—section 1226(c)(1)(E)

1  would be superfluous.[6] *Maldonado*, 2025 WL 237441, at *12 ("If § 1225(b)(2) already mandated
2  detention of any alien who has not been admitted, regardless of how long they have been here,
3  then adding § 1226(c)(1)(E) to the statutory scheme was pointless.").

4        The government further argues that petitioner's reading of section 1225(b)(2)(A) would
5  result in an "implied repeal" and would "strip DHS of its § 1225(b) detention authority." Doc. 13
6  at 9. Not so. Section 1225 contains two detention provisions: The first, section 1225(b)(1),
7  "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack
8  of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. §§ 1225(b)(1)(A)(i),
9  1182(a)(6)(C), (a)(7)). The second, section 1225(b)(2), "is broader" and "serves as a catchall
10 provision that applies to applicants for admission not covered by [section] 1225(b)(1)." *Jennings*,
11 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(2)(A), (B)). It applies to applicants for admission
12 "who are inadmissible for reasons other than fraud, misrepresentation, or lack of valid
13 documentation." *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 113 & n.20 (D. Mass. 2020) (listing
14 such other grounds of inadmissibility); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1163 (D. Ariz.
15 2022) ("[Section] 1225(b)(2) applies generally to all applicants not covered by [section]
16 1225(b)(1).").

17       The government does not argue that any detention provision other than section
18 1225(b)(2)(A) applies to petitioner. The only provision that could have applied is the "default
19 rule" of section 1226(a), which "authorizes the Government to detain certain aliens already in the
20 country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 288–89. The
21 government previously applied section 1226(a) to noncitizens, such as petitioner, who entered the
22 country without admission. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025)
23 ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond

---

[6] The government argues that "statutory overlap is not the same thing as superfluity," Doc. 7 at 8, and cites, for this proposition, *United States v. Atlantic Research Corporation*, 551 U.S. 128, 137 (2007). *Atlantic Research Corporation* does not support that proposition; there, the Court acknowledged that its interpretation would result in superfluity but noted that "[i]t is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction." *Atl. Research Corp.*, 551 U.S. at 137.

hearings for aliens who entered the United States without inspection."); Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Martinez*, 2025 WL 2084238, at *6.  While divining the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86, 412 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).  The Court finds that the government's longstanding practice, under which section 1226(a), and not section 1225(b)(2)(A), would have applied to petitioner's circumstances, is consistent with the text and statutory scheme.  *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion).[7]

The government also makes the policy argument that subjecting those who are detained at the border to mandatory detention, while allowing those who entered the United States without permission to be released on bond, "would create an incentive for aliens to enter unlawfully and take their chance at a bond hearing, rather than formally applying." Doc. 13 at 7–8.  This argument disregards the different due process considerations at issue for noncitizens encountered at the border or ports of entry, versus those at issue for noncitizens who have established residence in this country.[8]  As the court in *Romero* noted, applying section 1225 to those stopped at the border and section 1226 to those already in the country recognizes the distinction between persons inside the United States and persons outside the United States:

> That distinction is consistent with the long history of our immigration laws and with the Constitution. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies

---

[7] The fact that the government's new interpretation of the statute conflicts with years of prior interpretation also supports that petitioner has, at a minimum, shown that there are serious questions going to the merits of his claim regarding the statute's interpretation.

[8] Moreover, policy arguments cannot override the plain meaning of the text. *See also Romero*, 2025 WL 2403827, at *12.

13

>to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed.2d 653 (2001). "It is therefore reasonable to read these statutes 'against [that] backdrop.'" *Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025)).

*Romero*, 2025 WL 2403827, at *12–13; *cf. Lopez-Campos*, 2025 WL 2496379, at *9–10 (finding that the government's application of section 1225(b)(2)(A) in similar circumstances violated detainee's due process rights). In sum, the Court concludes that petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under section 1225(b)(2)(A).

### ii. Even if the Government's Reading of Section 1225(b)(2)(A) Was Correct, Petitioner Has a Protected Liberty Interest.

Moreover, even if respondents were correct that section 1225(b)(2)(A) could apply to petitioner, the government previously represented to petitioner, by releasing him on his own recognizance, that he had been released pursuant to section 1226(a). Doc. 4, Ex. B. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to him that his release was pursuant to section 1226, combined with the year he spent at liberty while relying on that representation.

Respondents next argue, citing *Thuraissigiam* and *Landon*, that petitioner has no due process rights and that his rights are limited to those provided by statute. Doc. 13 at 10–11 (citing

*DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). This argument is unpersuasive. First, it fails to appreciate the distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam* and *Landon*. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*; *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

Second, respondents' argument misconstrues the nature of the challenge that petitioner brings in this case, which is a challenge to his detention. *Thuraissigiam* held that a petitioner who was stopped at the border did not have any due process rights *regarding admission into* the United States. *Thuraissigiam*, 591 U.S. at 107; *see also Landon*, 459 U.S. at 32 ("("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . ."). However, petitioner challenges his re-detention without a hearing; he does not challenge in this habeas action any determination regarding his admissibility. *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention); *Hernandez,* 872 F.3d at 981 ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

"Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may

exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533 U.S. at 693.

The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over a year in reliance on the government's previous representations that he was being released pending his removal proceedings. His detention denies him that freedom.

16

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. *See* Doc. 1 at ¶ 34. Although respondents assert that petitioner violated the terms of the ISAP program on at least eight occasions, Doc. 13 at 3, petitioner asserts that he made every effort to comply and that these violations were due to malfunctions with the application, Doc. 16, Singh Decl. at ¶¶ 3–7, 9. He also asserts that he informed authorities every time there was a malfunction and that they attempted to fix it on numerous occasions. *Id.* ¶ 6. No neutral arbiter has determined whether the facts show that petitioner is a flight risk or danger to the community. *Cf. Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If Respondents wish to establish that re-detention is warranted by raising the effect of . . . Petitioner-Plaintiff's six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."). In a similar case, where a noncitizen had missed two appointments with ICE agents, the District Court for the Western District of Washington found: "It does not necessarily follow that Petitioner can be detained for those violations without a hearing. That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025). Similarly, here, as there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-

17

1 arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in
2 doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.
3       On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing.

### 3. Pre-Deprivation v. Post-Deprivation Bond Hearing

The Court must determine whether a pre-deprivation or post-deprivation hearing is warranted on the facts of this case. The district court's analysis in *Rodriguez Diaz v. Kaiser*, No. 25-CV-05071-TLT, 2025 WL 3011852 (N.D. Cal. Sept. 16, 2025), is instructive. There, the petitioner had allegedly incurred six violations of his release conditions, including missed check-ins and home visits. *Id.* at *3–4. Following the petitioner's last missed home visit, he appeared for a scheduled check-in. *Id.* The court found that the petitioner was entitled to a pre-deprivation hearing because each time that the petitioner "reported to ICE for a check-in" following one of his six alleged violations, "an ICE officer, at least implicitly, made a finding that [the petitioner] was not a flight risk." *Id.* at *13 (internal quotations omitted); *see E.A.T.B.*, 2025 WL 1402130, at *5 ("That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner attended multiple immigration court hearings where any violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.").

Here, however, petitioner missed a check-in on July 6, 2025, and the record does not reflect that petitioner had an in-person check-in or immigration court hearing between that date and September 29, 2025, when ICE arrested him at his home. *See* Doc. 1 at ¶ 18. In these circumstances, a post-deprivation hearing is appropriate. Petitioner seeks such relief in the alternative.

With these considerations in mind, petitioner is likely to succeed on the merits of his claims that 8 U.S.C. § 1225(b)(2)(A) does not apply to him and that his re-detention without a bond hearing violates the Due Process Clause.

### b. Irreparable Harm

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994

(quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can detain petitioner at all, but whether it can detain petitioner *without a bond hearing*. Faced with a choice "between [this minimally costly procedure] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### V.     Conclusion and Order

Accordingly, petitioner's motion for a preliminary injunction, Doc. 3, is GRANTED. Respondents are ENJOINED AND RESTRAINED from detaining petitioner unless they demonstrate, within seven (7) days of the date of this Order, by clear and convincing evidence at a bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the

1  community such that his physical custody is legally justified.  Respondents shall file a status
2  report within ten (10) days of the date of this Order, confirming whether a bond hearing was held
3  and, if so, the outcome of that hearing.

4  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts
5  regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.
6  2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

7  Respondents may file an additional brief related to the merits of the petition within 30
8  days, and petitioner may file a reply brief within 15 days of respondents' brief.  Alternatively, the
9  parties may stipulate to a different briefing schedule or to submitting the petition on the merits
10  based on the current record.

12  IT IS SO ORDERED.

13  Dated:   November 12, 2025
                                                                UNITED STATES DISTRICT JUDGE